

-PS-O-

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSEPH JACKSON,

      Plaintiff,

-v-

MARK BRADT, Superintendent;
W. MURRAY, Lieutenant;
C. MONIN, Correction Officer;
WAGNER, Correction Officer; and
ALBERT PRACK, Special Housing Unit Director,

      Defendants.

---

13-CV-0004M
ORDER

Plaintiff, Joseph Jackson, an inmate at the Southport Correctional Facility commenced this *pro se* action under 42 U.S.C. § 1983 alleging various violations of his constitutional rights that occurred when he was an inmate at the Attica Correctional Facility ("Attica CF"). Upon initial review of the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, the Court (Hon. Frank P. Geraci, Jr.): (1) dismissed certain claims with prejudice, (2) dismissed certain claims without prejudice with leave to amend such claims, and (3) directed certain claims to proceed to service pending the filing of an amended complaint, if any. (Docket No. 7, Decision and Order, filed August 26, 2013 ("Decision and Order"). The following claims were dismissed but with leave to amend: (1) the retaliation claims against D. O'Connell only relating to the November 5, 2011 visit and the November 6, 2011 Misbehavior Report arising from said visit (*id.*, pp. 7-10, *supra*); and (2) the due process claims against Superintendent Mark Bradt and Lieutenant Murray relating to the November 10, 2011 Disciplinary Hearing held in relation to the November 6, 2011

Misbehavior Report (*id.*, pp. 11-15, *supra*). Only the retaliation and excessive force claims against defendants Wagner and Monin arising from a March 6, 2012 cell search were allowed to proceed to service without amendment. (*Id.*, pp. 19-20, 25; Docket No. 1, Complaint, ¶ ¶ 34; pp. 18-20). Service however was stayed pending the filing of an amended complaint.[1] Plaintiff has filed an amended complaint, which is now subject to screening pursuant to 28 U.S.C. § § 1915(e)(2)(B) and 1915A.

Plaintiff has also filed a motion for the appointment of counsel which is denied at this time without prejudice as premature. A more fully developed record will be necessary before the Court can determine whether plaintiff's chances of success warrant the appointment of counsel. Therefore, plaintiff's motion is denied without prejudice to its renewal at such time as the existence of a potentially meritorious claim may be demonstrated. See *Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997) (when determining whether to appoint counsel, the Court must first look to the "likelihood of merit" of the underlying dispute).

---

[1] The following claims were dismissed with prejudice: (1) the claims against James T. Conway and Mark Bradt in their entirety relating to the visitation sanction imposed and extended against plaintiff and Brenda Crawley (Decision and Order, pp. 4-7); (2) the Eighth Amendment claim against Sgt. D. O'Connell relating to the November 5, 2011 visit by Crawley (*id.*, pp. 7-8, *supra*); (3) the due process and retaliation claims as against C.O. Kozakiewiez and Lt. Kaczmarek relating to the November 6, 2011 Misbehavior Report and subsequent Disciplinary Hearing (*id.*, pp. 11-15); (4) the claims relating to plaintiff's sister's visit on October 29, 2011, and the failure to file or process plaintiff's grievances as against C.O. Sekuterski, Pam Korozko, I.G.P. Supervisor M. Janes, and I.G.O. Director Karen Bellamy (*id.*, pp.15-18); and (5) the retaliation (cell search, racial slurs and urinalysis test) and excessive force claims against all defendants, except Monin and Wagner, based on a criminal complaint filed by plaintiff on February 23, 2012 (*id.* pp. 18-20).

## DISCUSSION

### A.  STANDARD OF REVIEW

In evaluating the amended complaint, the Court must accept as true all of the factual allegations and must draw all inferences in plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). While "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).

### B.  PLAINTIFF'S CLAIMS

#### 1.  First Claim

Plaintiff's amended complaint is brought against Bradt, Superintendent; Murray, Lieutenant/Hearing Officer; O'Connell, Sergeant; Monin, C.O.; Wagner, C.O.; and Prack, Special Housing Unit Director. It raises two separate claims. The First Claim ("Claim I) again alleges that on October 1, 2010, Conway, Attica C.F.'s former Superintendent had suspended the visitation privileges of Brenda Crawley for one year and that on October 26, 2011, Bradt sanctioned both plaintiff and Crawley by limiting them to non-contact visits for

six months. (Docket No. 8, ¶ 33-35.)[2] On October 29, 2011, Crawley visited plaintiff and, when registering for the visit, she informed the desk officer that her name had changed to Adams. After registering she was allowed to visit plaintiff. (Amended Complaint, ¶ 37.) On November 5, 2011, Adams again visited plaintiff but during the course of the visit defendant O'Connell interrupted and asked Adams if she had changed her name. Adams explained that she had changed her name after her divorce and that she had informed the desk officer of the name change. After O'Connell confirmed that Adams had changed her name, he allowed the visit to continue. (Id., ¶ 38.)

On November 6, 2011, plaintiff was placed on keeplock and issued a Misbehavior Report by O'Connell for failing to inform officers that he was permitted only non-contact visits with Crawley (Adams). Plaintiff immediately filed a grievance against O'Connell based on the issuance of the Misbehavior Report and his "altogether harassment." (Id., ¶ 39-40, Exh. A-2, p.4.) Plaintiff alleges that the Tier III Misbehavior Report was issued by O'Connell based on "harassment, discriminatory and[/] or retaliation." He claims that O'Connell had an alleged verbal altercation with Adams at some time wherein he had advised her that she could not enter the facility, which plaintiff's claims was contrary to Bradt's authorization to allow Adams to re-enter the facility. This, plaintiff claims, was all part of O'Connell's harassment and retaliation against him. (Id., ¶¶ 43-44, 48.)

The Tier III Hearing before Murray was held on November 10, 2011, and plaintiff alleges that Murray was biased and denied plaintiff the opportunity to adequately question the witnesses by interjecting and rephrasing plaintiff's questions to the witnesses in a

---

[2] Any First (association claims) and Fourteenth (due process claims) Amendment claims related to the suspension or denial of visits were dismissed previously with prejudice. (Decision and Order, pp. 3-7.)

leading manner. (*Id.*, ¶¶ 46-47, 49.) Murray found plaintiff guilty and sentenced him to two months keeplock, and six months loss of privileges, including visits with Adams. Plaintiff claims "he was sent to Special Housing Unit ["SHU]."

Plaintiff alleges that his claims arise under the First and Fourteenth Amendments and the Court construes them, as it did when the claims were raised in the complaint initially, as claims of retaliation against O'Connell (First Amendment) and a violation of due process against Murray and Prack, who affirmed Murray's disposition (Fourteenth Amendment).

The Decision and Order, which dismissed the retaliation claims against O'Connell without prejudice, noted that "a complaint which alleges retaliation in wholly conclusory terms may be safely dismissed on the pleadings alone [because] [i]n such a case, the prisoner has no factual basis for the claim. *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). Plaintiff's claims still lack any factual support that O'Connell issued the Misbehavior Report on November 6, 2011 in retaliation for some protected conduct engaged in by plaintiff. Plaintiff's allegations that "O'Connell violated policy and due process when he wrote misbehavior report to harass and retaliate against plaintiff and[/]or Ms. Adams after, alleged, verbal dispute with Ms. Adams to deprive plaintiff of his liberty and his property, and due to their being no DOCCS[3] Rule to match the [allegations set forth in] the Misbehavior Report . . ." are simply insufficient to support a claim of retaliation against O'Connell. Accordingly, the Court finds that plaintiff's allegations of retaliation with respect

---

[3]DOCCS refers to the New York State Department of Corrections and Community Supervision.

to the issuance of the November 6, 2011 Misbehavior Report must be dismissed with prejudice because they fail to state a claim upon which relief can be granted.

With respect to the due process claim against Murray, the claim pled in the complaint was dismissed because plaintiff failed to allege whether he was sentenced to some form of disciplinary confinement and what the circumstances of any such confinement was, and because plaintiff failed to allege sufficiently that Murray was biased and denied him due process at the Hearing. (Decision and Order, pp. 13-14.) The amended complaint alleges that plaintiff was sentenced to two months keeplock, which apparently was served in Attica C.F.'s SHU, and a six month loss of privileges, including visitation with Adams. It also alleges that Murray interjected during plaintiff's questioning of witnesses which constructively denied him the right to call witnesses and present a defense.

A state inmate's liberty interest is implicated by prison discipline only if the discipline "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir.2004) ("A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' ") (quoting *Sandin*, 515 U.S. at 484). *Sandin* "established an analysis under which the degree and duration of an inmate's restraint are the key considerations to determine the existence of a state-created liberty interest[]" for purposes of determining whether there was a due process violation in the context of prison discipline. *Arce v. Walker*, 139 F.329, 335 (2d Cir. 1998). The Court of Appeals for the Second Circuit has "explicitly avoided a bright line rule

6

that a certain period of SHU confinement automatically fails to implicate due process rights" and has "explicitly noted that SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions ... or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer*, 364 F.3d at 64–65.

When determining whether a plaintiff possesses a liberty interest, district courts must examine the specific circumstances of confinement, including an analysis of both the length and conditions of confinement. *See Sealey v. Giltner*, 197 F.3d 585, 586 (2d Cir. 1999); *Arce*, 139 F.3d at 335-36; *Brooks v. DiFasi*, 112 F.3d 46, 48-49 (2d Cir. 1997). In cases involving shorter periods of segregated confinement where the plaintiff has not alleged any unusual conditions, however, a detailed explanation of this analysis is not necessary. *See Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Arce*, 139 F.3d at 336.

"[C]ourts within the Second Circuit have repeatedly found that periods of SHU confinement under normal conditions 'lasting fewer than 101 days have been found not to amount to [an] atypical and significant hardship.'" *Mosley v. Woodly*, 2013 WL 5347272, at *8 (N.D.N.Y. Sept. 23, 2010) (Adopting Report and Recommendation) (finding 67 days in SHU did not implicate a liberty interest) (citing *Dawkins v. Gonyea*, 646 F.Supp.2d 594, 606 (S.D.N.Y.2009) (citing *Sealey*, 197 F.3d at 588–90). This District in *Edmonson v. Coughlin*, 1996 WL 622626, at *4–5 (W.D.N.Y. Oct. 4, 1996), found that courts within the Second Circuit tend to rule, as a matter of law, that "disciplinary keeplock or SHU confinement to 60 days or less in New York prisons is not an atypical or significant hardship in relation to the ordinary incidents of prison life.") (collecting cases). *See also McEachin*

*v. Sealey*, 2010 WL 3259975, at *9 (N.D.N.Y., March 30, 2010) ("Nevertheless, courts within the Second Circuit tend to rule, as a matter of law, that 'disciplinary keeplock or SHU confinement to 60 days or less in New York prisons is not an atypical or significant hardship in relation to the ordinary incidents of prison life.'") (quoting *Edmonson*, 1996 WL 622626, at *4–5); *Alvarado v. Kerrigan*, 152 F. Supp. 2d 350, 355 (S.D.N.Y. 2001) (93 days) (citing *Williams v. Goord*, 111 F. Supp. 2d 280, 289 (S.D.N.Y. July 28, 2000) (75 days confinement); *Jackson v. Johnson*, 15 F. Supp. 2d 341, 361–62 (S.D.N.Y. 1998) (99 days); *Trice v. Clark*, 1996 WL 257578, at *3 (S.D.N.Y. May 16, 1996) (150 days)).

As noted, plaintiff has alleged that he was sentenced to 60 days keeplock, which he served in SHU, and a loss of privileges for six months. He does not allege, however, that the conditions of his confinement "differed from the ordinary incidents of prison life as experienced by other SHU or general population inmates." *Mosley*, 2013 WL 5347272, at *8 (finding 67 days in SHU did not implicate a liberty interest). The Court therefore finds that plaintiff has not stated a claim under *Sandin* and his due process claim against both Murray and Prack in relation to the Tier III Hearing regarding the November 6, 2011 Misbehavior Report must be dismissed with prejudice.

As to defendant Prack,[4] the only allegation is that he affirmed Murray's disposition. (*Id.*, ¶ 53). This allegation alone is insufficient to state a claim against Prack. *See Woodward v. Mullah*, 2009 WL 4730309, at *2-3 (W.D.N.Y. Dec. 7, 2009) (McCarthy, M.J.)

---

[4]The complaint appeared to allege that it was the Superintendent, either Bradt or Conway, who affirmed Murray's disposition of the Tier III Hearing (Decision and Order, pp.14), which was cleared up in the amended complaint when plaintiff alleges that he appealed to Prack and Prack affirmed the disposition. (Amended Complaint, ¶ 53.) Tier III appeals are made to the Commissioner of DOCCS who regularly assigns them to a designee, whereas Tier I and II appeals are made to the Superintendent of the Facility.

("while personal involvement cannot be founded solely on supervision, liability can be found if the official proactively participated in reviewing the administrative appeals as opposed merely to rubber-stamping the results.") (internal quotations and citations omitted) (Report and Recommendation adopted by Arcara, J.).

Even if plaintiff had alleged a cognizable liberty interest and thus a right to procedural due process at his Hearing, he has not alleged a violation of due process when he alleges that Murray interjected during plaintiff's questioning of C.O. Kozakiewicz and rephrased a question plaintiff had asked. Plaintiff had asked Kozakiewicz "why he did not follow DOCCS policy by writing plaintiff a Misbehavior Report if he felt that plaintiff violated DOCCS Rules on the day of the incident." Rather than allowing Kozakiewicz to answer, Murray interjected and asked Kozakiewicz, "did you not write the ticket because Sergeant O'Connell wrote the ticket already." Kozakeiwicz answered "yes." (Amended Complaint, ¶ 46.) This is insufficient to allege that plaintiff was denied a meaningful opportunity to present a defense.

"[I]t is well settled that an inmate does not possess a constitutional right to confront or cross-examine witnesses in prison disciplinary hearings." *Fernandez v. Callens*, 2010 WL 4320362, *11 (W.D.N.Y. 2010) (Schroeder, M.J.) (citing *Wolff v. McDonnell*, 418 U.S. 539, 567 68 (1974); see also *Silva v. Casey*, 992 F.2d 20, 22 (2d. Cir. 1993) ("an inmate has no constitutional right of confrontation"); *Sowell v. Harris*, 2013 WL 3324049 at *10 (W.D.N.Y. July 1, 2013) ("As a matter of federal constitutional law, an inmate does not have a right to cross-examine adverse witnesses at a disciplinary hearing"); *Toliver v. New York City Department of Corrections*, 2013 WL 3779125, *10–11 (S.D.N.Y. July 8, 2013) ("Mr. Toliver also claims that he was denied his right to call the officers, who had issued him [the

infraction], to testify at the hearing. However, due process protection does not provide inmates right to confront and cross-examine those furnishing evidence against the inmate"). The Court finds that Hearing Officer Murray's limited interjection and rephrasing of the question as alleged in the complaint did not deprive plaintiff of a meaningful opportunity to present a defense.

Plaintiff's allegations that Murray was biased or partial and ruled against him is also insufficient to allege that he was denied due process at the Hearing. An impartial hearing officer is "one who, inter alia, does not prejudge the evidence and who cannot say . . . how he would assess the evidence he has not yet seen." *Patterson v. Coughlin*, 905 F.2d 564, 569-70 (2d Cir. 1990). "The degree of impartiality required of prison administrators does not rise to the level of that required of judges generally." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996). "An inmate's own subjective relief that the hearing officer was biased is insufficient to create a genuine issue of material fact." *See Johnson v. Fernandez*, 2011 WL 7629513, at * 11 (N.D.N.Y. March 1, 2011) (Report and Recommendation) (citing *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir.1989); *Clyde v. Schoellkopf*, 714 F. Supp. 2d 432, 437–38 (W.D.N.Y. 2010) (Larimer, J.)).

Other than plaintiff's allegation that Murray interfered with his questioning of Kozakiewicz and that Kozakiewicz lied when asked "why the visit [with Adams] was not terminated if the alleged violation took place" (Amended Complaint, ¶ 49), plaintiff's claim that Murray was biased is not supported by facts which would establish such bias. Accordingly, any claims that plaintiff was denied due process at the Hearing fail to state a claim upon which relief can be granted.

2. <u>Second Claim</u>

The Second Claim alleges, as the complaint did, that defendant Monin and C.O. Gallagher searched plaintiff's cell and that at some time during or following the search Monin ripped plaintiff's legal documents, grabbed him, slapped him, slammed him to the bed and stated to him, " 'you like to write grievances don't you tough guy' " and " '[i]f you write any more grievances on Sergeant O'Connell we'll be back.' " (Amended Complaint, ¶¶ 54-55). Wagner, who had followed plaintiff into his cell and was in the cell at the time Monin allegedly slapped and slammed plaintiff to the bed, asked Monin, " 'are you sure there's [sic] no weapons in here?,' " insinuating they could plant one in the cell and set plaintiff up if they wanted. (*Id.*, ¶ 55.)[5]

Plaintiff immediately filed a grievance and the next day, March 7, 2012, plaintiff was issued a Misbehavior Report authored by C.O. Galloway, who was the C.O. that searched plaintiff's cell along with Monin, charging him with a number of violations of Inmate Rules: possessing an authorized item that has been altered (113.11); altering or revising an electrical device (118.31); altering personal property without authorization (116.11); exchanging a personally owned articles without authorization (113.15); possessing unauthorized jewelry (113.17); and smuggling (114.10). (Amended Complaint, ¶ 56, Exh. B-6.)

---

[5]To the extent that plaintiff claims that Monin and Wagner violated the First (retaliation) and Eighth (excessive force) Amendments, the Court had initially allowed those claims to proceed to service pending receipt of the amended complaint. (Decision and Order, at 19-20.)

Plaintiff alleges that Hearing Officer Murray denied plaintiff the right to question Monin about what occurred during the cell search and rephrased plaintiff's questions of other witnesses thereby leading the witnesses to answer "yes" or "no" only and preventing the witnesses from "giv[ing] up] any information on or for the record." (Amended Complaint, ¶¶ 57-59.)[6]  Plaintiff also alleges that Murray made a biased statement after dismissing the smuggling charge: " 'I still believe you smuggled this ring in somewhere.' " (Id., ¶ 59.) Murray found plaintiff guilty of the remaining charges and sentenced plaintiff to six days time served for the Tier II infractions (id., ¶ 60, Exh. B-6).[7]

As noted, above, a prisoner does not have a cognizable liberty interest unless he has suffered an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. A disciplinary sentence of six days time served, in the absence of any allegations regarding how the conditions of said confinement was atypical and significant, fails to state a cognizable liberty interest. *See, e.g., Brown v. Graham*, 2010 WL 6428251, at *9 (N.D.N.Y. March 30, 2010) (Report & Recommendation), *adopted by District Judge*, 2011 WL 1213482 (March 31, 2011) ("The federal district courts in New York, applying *Sandin*, have been consistent in holding that terms of SHU or 'keeplock' of approximately 30 days or less, and the related loss of privileges, do not

---

[6]The complaint did not allege specifically a due process claim relating to the March 7, 2012 Misbehavior Report and subsequent Hearing. It only alleged that plaintiff was found guilty after a hearing on all the charges and this his appeal, presumably to Bradt, was denied. The Court therefore did not construe the complaint as alleging a due process claim. (Decision and Order, at 19-21.) The Court does, however, construe the amended complaint as asserting such a claim.

[7]DOCCS has a three tier disciplinary system and conducts three types of inmate disciplinary hearings. Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit ("SHU"). Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits. *See Hynes v. Squillace*, 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S. 907 (1998).

*aff'd* 470 Fed.Appx. 11 (2d Cir. 2012)). Accordingly, plaintiff's due process claims arising from the March 7, 2012 Misbehavior Report and Tier II Hearing are dismissed in their entirety.

## CONCLUSION

For the reasons discussed above, the claims set forth in plaintiff's amended complaint are dismissed with prejudice pursuant to 28 U.S.C. § § 1915(e)(2)(B)(ii) and 1915A, except that part of the the Second Claim only which alleges retaliation and use of excessive force as against defendants Monin and Wagner, and the U.S. Marshal is directed to serve the summons and amended complaint on Monin and Wagner regarding those remaining claims.

## ORDER

IT HEREBY IS ORDERED, that plaintiff's amended complaint is dismissed with prejudice, except as to that part of the Second Claim which alleges retaliation and use of excessive force against defendants Monin and Wagner;

FURTHER, that the Clerk of the Court is directed to terminate defendants Mark L. Bradt, W. Murray, D. O'Connell, and Albert Prack as parties to this action

FURTHER, that plaintiff's motion for the appointment of counsel (Docket No. 9) is denied without prejudice;

FURTHER, that the Clerk of the Court is directed to cause the United States Marshal to serve copies of the Summons, Amended Complaint, this Order and the Order, filed August 26, 2013 (Docket No. 7) upon defendants Monin and Wagner without plaintiff's

payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in plaintiff's favor;[8]

FURTHER, the Clerk of the Court is directed to forward a copy of this Order by email to Michael Russo, Assistant Attorney General in Charge, Buffalo Regional Office <Michael.Russo@ag.ny.gov>;

FURTHER, that pursuant to 42 U.S.C. § 1997e(g)(2), the defendants are directed to respond to the complaint.

SO ORDERED.

DATED: 5/28, 2014
Buffalo, New York

_____
JOHN T. CURTIN
United States District Judge

---

[8]Pursuant to a Standing Order of Court, filed September 28, 2012, a defendant will have 60 days to file and serve an answer or other responsive pleading, see Fed.R.Civ.P. 12(a)-(b), if the defendant and/or the defendant's agent has returned an Acknowledgment of Receipt of Service by Mail Form within 30 days of receipt of the summons and complaint by mail pursuant to N.Y.C.P.LR. § 312-a.