UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSEPH JACKSON (05-B-1287),                    13-CV-4-LJV-MJR
                                               REPORT AND RECOMMENDATION
                    Plaintiff,

        -v-

CHRISTOPHER MONIN and
ERIC WAGNER,

                    Defendants.
_____

        This case has been referred to the undersigned for all pre-trial matters, including

preparation of a report and recommendation on dispositive motions.   (Dkt. No. 56).

Before the Court is a motion for summary judgment by defendants Christopher Monin

and Eric Wagner (Dkt. No. 42) and a cross motion for summary judgment by plaintiff

Joseph Jackson (Dkt. No. 61).  For the following reasons, I recommend that defendants'

motion be granted in part and denied in part and that Jackson's motion be denied.

## BACKGROUND

        Plaintiff Joseph Jackson, a *pro se* inmate at the Attica Correctional Facility

("Attica"), commenced this 42 U.S.C. §1983 action against employees and officials of

the New York State Department of Corrections and Community Supervision ("DOCCS").

Jackson's surviving claims allege that two Attica correction officers, Christopher Monin

and Eric Wagner, searched Jackson's cell and assaulted him in retaliation for Jackson

having filed grievances against non-party Sergeant O'Connell.[1]

        The events leading up to the cell search began in October 2010.  On October 1,

2010, Attica barred Jackson's fiancée, Brandy Crawley, from visiting Jackson for one

_____

[1]        The Court dismissed O'Connell from this action in May 2014.  (Dkt. No. 10 at 13).

year.  (Dkt. No. 8 ¶¶33-34; Dkt. No. 61-2 ¶3).  On October 26, 2011, after the one-year prohibition expired, Attica limited Crawley and Jackson to non-contact visits for the next six months.  (Dkt. No. 8 ¶36).  Three days later, on October 29, 2011, Crawley checked into Attica using the name "Brandy Adams" and proceeded to have a "normal," contact visit with Jackson.  (*Id.* ¶¶37, 43).  Jackson contends that when Crawley checked in, she advised the desk officer that her last name had changed to Adams on account of her recent divorce.  (*Id.* ¶37).  On November 5, Crawley and Jackson had another contact visit.  This time, O'Connell interrupted and asked Crawley if she changed her last name to Adams.  (*Id.* ¶38; Dkt. No. 61-2 ¶5).  Crawley acknowledged that she had changed her last name, but she advised O'Connell that she had informed the desk officer of this fact prior to her visit.  (Dkt. No. 8 ¶38).  Two days later, on November 7, O'Connell issued Jackson a Misbehavior Report accusing him of failing to inform Attica's visiting room staff that he was limited to non-contact visits with Crawley.  (*Id.* ¶¶39-40).  Attica held a disciplinary hearing on the Misbehavior Report, after which Jackson was found guilty and precluded from, among other things, visiting with Crawley for six months.  (*Id.* ¶¶46, 50).

In addition to the Crawley incident, Jackson claims that O'Connell and Attica's visiting room staff harassed his brother and sister when they visited him.  (Dkt. No. 8-1 at 8-10).  On October 10, 2011, Jackson filed a grievance concerning the alleged harassment.  (*See id.* at 8-9).

On November 7, 2011 — the same day O'Connell issued Jackson a Misbehavior Report for his contact visit with Crawley — Jackson filed a grievance against O'Connell contending that the Misbehavior Report was retaliation for Jackson's October 10, 2011

grievance.   (Dkt. No. 8 ¶40; Dkt. No. 8-1 at 8-9).   Between November 2011 and February 2012, Jackson filed additional grievances and wrote several letters to DOCCS officials complaining about O'Connell's alleged harassment and DOCCS's failure to respond to Jackson's grievances.  (Dkt. No. 8 ¶¶13-26; Dkt. No. 8-1 at 12-54).

Jackson contends that on March 6, 2012, Monin and non-party correction officer Gallaway searched his cell in retaliation for Jackson's grievances against O'Connell. (Dkt. No. 8 ¶¶54-55; Dkt. No. 61-2 ¶8).   During the search, Monin allegedly ripped Jackson's legal documents, grabbed him, slapped him, slammed him to the bed, and stated "you like to write grievances don't you tough guy" and "[i]f you write any more grievances on Sergeant O'Connell we'll be back."  (Dkt. No. 8 ¶¶54-55).  Wagner, who was also present, asked Monin "are you sure there's no weapons in here?"  (*Id.* ¶55). According to Jackson, Wagner's inquiry suggests that Monin and Wagner could plant a weapon in his cell if they so desired.  (*Id.*).  Jackson does not allege that he suffered any injuries during the incident, and he did not seek medical treatment.  (Dkt. No. 43 ¶¶15-16).  Defendants acknowledge searching Jackson's cell, but they dispute using any force against Jackson, ripping his legal papers, or threatening him.  (Dkt. Nos. 58, 59).

Jackson commenced this action in January 2013.   Upon initial review of the complaint pursuant to 28 U.S.C. §§1915(e)(2)(B) and 1915A, the Court (Hon. Frank P. Geraci, Jr.) dismissed certain claims with prejudice, dismissed certain claims with leave to amend, and directed certain claims to proceed to service pending the filing of an amended complaint, if any.  (Dkt. No. 7).  In response, Jackson filed his amended complaint.   (Dkt. No. 8).   The Court (Hon. John T. Curtin) reviewed the amended

complaint before dismissing additional claims and defendants.  (Dkt. No. 10).  Jackson

has two remaining claims, both of which are against Monin and Wagner in their

individual and official capacities.   Jackson's first claim is an Eighth Amendment

excessive force claim alleging that Monin assaulted him during the cell search.  (*Id.* at

13; Dkt. No. 8 ¶¶54-55).  Jackson's second claim is a First Amendment retaliation claim

alleging that the cell search was retaliation for his grievances against O'Connell.  (Dkt.

No. 10 at 13; Dkt. No. 8 ¶¶54-55).

In October 2015, defendants moved for summary judgment on both claims.  (Dkt.

No. 42).   In support of dismissal of Jackson's Eighth Amendment claim, defendants

deny that Monin slapped or shoved Jackson, and even assuming he did, they argue that

his use of force is *de minimis* and does not violate the Eighth Amendment.  (Dkt No. 45

at 3-7).  With respect to Jackson's First Amendment retaliation claim, defendants argue

that Jackson did not suffer an "adverse action" during the cell search and that there is

no causal connection between Jackson's grievances and the search.  (*Id.* at 8-10).

Defendants also argue that Jackson's official capacity claims are barred by the Eleventh

Amendment.  (*Id.* at 11-12).

In opposition to defendants' motion, Jackson filed a "Notice of Motion to Dismiss

Summary Judgment" and an "Affidavit in Support of Notice of Motion to Dismiss

Summary Judgment."  (Dkt. No. 51).  In his affidavit, Jackson contends that defendants

failed to produce grievances and unusual incident reports concerning Monin and

Wagner, and that he needs these documents to oppose defendants' motion.  (*Id.* ¶¶2-

3).[2]

---

[2]     Jackson's affidavit also contends that defendants denied him access to individuals who witnessed the cell search.  (Dkt. No. 51 ¶4).  However, because the Court previously denied Jackson's motion to

After Jackson submitted his affidavit, but before it was docketed in the CM/ECF System, defendants produced documents concerning grievances against Monin and Wagner, and they received an extension of time to produce unusual incident reports. (Dkt. Nos. 47, 49). Shortly thereafter, defendants produced unusual incident reports concerning Monin and Wagner. (Dkt. No. 52). Jackson then filed an "Amending Affidavit of Motion to Dismiss Summary Judgment." (Dkt. No. 53). Jackson's amended affidavit attaches documents concerning unrelated grievances against Wagner and argues that these documents support his allegations regarding the cell search. (*Id.*).[3]

On reply, defendants argue that the unrelated grievances constitute inadmissible propensity evidence. (Dkt. No. 55 at 3-4). Defendants also argue that Jackson failed to respond to their Statement of Undisputed Facts and that their proposed facts should therefore be deemed admitted. (*Id.* at 2).

During oral argument on defendants' motion, the Court observed that defendants' Statement of Undisputed Facts references Monin's and Wagner's declarations (*see* Dkt. No. 43 ¶¶3, 4), but that defendants did not file either declaration on the CM/ECF System. The Court granted defendants permission to belatedly file their declarations, and permitted Jackson to submit a response. (Dkt. No. 57). Defendants then filed Monin's and Wagner's declarations (Dkt. Nos. 58, 59), and Jackson filed a cross motion for summary judgment that closely mirrors his amended complaint (Dkt. No. 61). As discussed below, I recommend that the Court deny Jackson's cross motion for summary

---

compel production of such information (Dkt. No. 41 at 2, 9), Jackson's contention that defendants improperly denied him access to witnesses is without merit.

[3] Jackson's amended affidavit also argues that defendants failed to produce all grievances against Monin. (Dkt. No. 53 ¶4). At oral argument on defendants' motion, defense counsel represented that defendants have produced all grievances against Monin. Thus, the Court rejects this branch of Jackson's opposition.

judgment.  However, because I afforded defendants the opportunity to supplement their motion with Monin's and Wagner's declarations, I will treat the documents Jackson submitted in support of his cross motion (Jackson's response to defendants' Statement of Undisputed Facts, his declaration, and his "objections to defendants' points") as a supplemental opposition to defendants' motion.[4]

## DISCUSSION

Summary judgment should be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. ("Rule") 56(a).  "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'"  *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)).  The party moving for summary judgment bears the burden of demonstrating that no genuine dispute of material fact exists.  *Gummo v. Vill. of Depew*, 75 F.3d 98, 107 (2d Cir. 1996).  Once the moving party has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must "come forward with specific facts showing that there is a *genuine issue for trial*."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation marks and citation omitted).  If the nonmoving party is proceeding *pro se*, the Court must read his summary judgment opposition liberally and

---

[4]    Even if I entirely disregarded Jackson's cross motion, I would still not recommend summary judgment on Jackson's First Amendment Claim because Jackson's amended complaint (which, as discussed below, may be treated as an affidavit) creates a disputed issue of fact as to the adverse action and causation elements of that claim.

interpret it to raise the strongest arguments that it suggests.  *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

Under Local Rule of Civil Procedure ("Local Rule") 56, the party moving for summary judgment must submit a "separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Rule 56(a)(1).  The party opposing the motion must then respond to each numbered paragraph and, if necessary, provide his own statement of additional facts as to which he contends there exists a genuine issue to be tried.  Local Rule 56(a)(2).  "Each numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement."  *Id.*

Here, defendants argue that Jackson's failure to timely respond to their Statement of Undisputed Facts compels treating their proposed facts as admitted.  Defendants' argument is moot because, in his supplemental opposition, Jackson admits all but one of defendants' proposed facts, and with respect to the one fact he denies, Jackson does not dispute the substance of the fact, but rather points out that it occurred on a different date.  (Dkt. No. 61-1 ¶¶1-2).  Jackson's admissions do not, however, entitle defendants to summary judgment because defendants' proposed facts do not address exactly what happened during the March 6, 2012 cell search.  Thus, to determine whether summary judgment is appropriate, the Court must look beyond defendants' Statement of Undisputed Facts to the materials in the record, including affidavits and declarations.  *See* Rule 56(c).  In performing this review, the Court will

treat Jackson's amended complaint (Dkt. No. 8) as an affidavit because Jackson

verified his complaint by attesting under penalty of perjury that its statements are true

and correct.  (Dkt. No. 8 at 27); *see Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).[5]

       I.    <u>*Eighth Amendment (Excessive Force)*</u>

The Eighth Amendment prohibits "[t]he 'unnecessary and wanton infliction of

pain' on a prisoner."  *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (quoting

*Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  An Eighth Amendment claim consists of

two elements.   First, the plaintiff must show that the alleged punishment was

"objectively, sufficiently serious."  *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 834

(1994)).  "[A] *de minimis* use of force will rarely" meet this requirement.  *Romano v.

Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).  Second, the plaintiff must show that the

official involved in the alleged punishment acted with a "sufficiently culpable state of

mind."  *Boddie*, 105 F.3d at 861 (quoting *Farmer*, 511 U.S. at 834).

Here, Jackson contends that during the cell search, Monin grabbed him, slapped

him, and slammed him to his bed.  (Dkt. No. 8 ¶55; Dkt. No. 61-2 ¶8).  Defendants

acknowledge that they searched Jackson's cell, but they dispute that Monin used force

against Jackson.  Even assuming, however, that Monin did slap and shove Jackson,

Monin's use of force does not support an Eighth Amendment claim because the force

was *de minimis* and Jackson was not injured.  *See, e.g.*, *McEachin v. Bek*, No. 06-CV-

6453(MAT), 2012 WL 1113584, at *7 (W.D.N.Y. Apr. 2, 2012) ("CO Kingsley denies

having struck [plaintiff] in the head three times with his closed fist.  Even assuming that

this occurred, [plaintiff's] claim fails because the application of force against him was *de*

---

[5]      During oral argument on defendants' motion, defense counsel acknowledged that Jackson's statements constitute evidence.

*minimis.*"); *Jones v. Goord*, 05-CV-0182A, 2008 WL 904895, at *4 (W.D.N.Y. Mar. 31, 2008) ("At most, plaintiff was struck by an open-handed slap, which, regardless of [defendant's] motivation, is considered a *de minimis* use of force . . . ."). Contrary to Jackson's argument (Dkt. No. 53 ¶3), unrelated grievances against Wagner have no bearing on Monin's use of force, nor do they create a genuine issue of fact as to whether the force was excessive. Therefore, I recommend that the Court grant summary judgment to defendants on Jackson's Eighth Amendment claim.

## II.   *First Amendment (Retaliation)*

As a threshold matter, because prisoner retaliation claims are easily fabricated and may intrude into matters of prison administration, the Court must approach Jackson's First Amendment retaliation claim with skepticism and particular care. *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). To establish a retaliation claim, Jackson must show (1) that his speech or conduct was protected; (2) that defendants took an adverse action against him; and (3) that there is a causal connection between his protected activity and the adverse action. *Id.* at 492. Defendants challenge the second (adverse action) and third (causal connection) elements of Jackson's retaliation claim.

### A.   *Protected Activity*

Defendants do not dispute that Jackson engaged in protected activity, and the Court finds that Jackson's grievances against O'Connell are indeed protected by the First Amendment. *Id.* (internal prison complaint is protected by the First Amendment).

B. *Adverse Action*

An adverse action is conduct "that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Id.* at 493; *see also Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) ("[The] objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits."). Adverse actions include assaulting an inmate and destroying his legal papers. *See, e.g.*, *Edwards v. McGrain*, 09-CV-582S, 2012 WL 6701826, at *6 (W.D.N.Y. Dec. 26, 2012) (assault is an adverse action); *Keesh v. Goord*, No. 04-CV-271A, 2007 WL 2903682, at *8 (W.D.N.Y. Oct. 1, 2007) (confiscation of legal papers is an adverse action).[6]  To compare, a verbal threat that never amounts to anything is not an adverse action. *Kemp v. LeClaire*, No. 03-CV-844S, 2007 WL 776416, at *15 (W.D.N.Y. Mar. 12, 2007).

Monin's alleged assault and his destruction of Jackson's legal papers during the cell search are adverse actions. While defendants dispute taking these actions, this is an issue for the trier of fact to resolve. However, defendants' alleged threats against Jackson do not amount to an adverse action because Jackson has not shown that the threats resulted in any further action or injury.

C. *Causal Connection*

To establish a causal connection, the plaintiff must come forward with evidence sufficient to support the inference that his protected activity played a substantial part in the adverse action. *See Diesel v. Town of Lewisboro*, 232 F.3d 92, 107 (2d Cir. 2000).

---

[6] Unlike a First Amendment access to the courts claim, Jackson's retaliation claim does not require him to show that defendants' destruction of his legal papers hindered his ability to pursue a legal claim. *See Keesh*, 2007 WL 2903682, at *8, 12 (denying dismissal of plaintiff's retaliation claim, but granting dismissal of plaintiff's access to the courts claim because plaintiff failed to show that defendants' taking of his legal materials hindered his ability to pursue a legal claim).

The events leading up to defendants' search of Jackson's cell, along with Monin's threat, raise a genuine issue of fact as to causation.

On November 7, 2011, Jackson filed a grievance against O'Connell regarding his visit with Crawley.  (Dkt. No. 8-1 at 8-10).   Between November 2011 and February 2012, Jackson filed additional grievances and wrote letters to DOCCS officials accusing O'Connell of harassment.  (Dkt. No. 8 ¶¶13-26; Dkt. No. 8-1 at 12-54).   On March 6, 2012, Monin and Wagner searched Jackson's cell, and Jackson contends that Monin warned him not to file any more grievances against O'Connell.  (Dkt. No. 8 ¶55; Dkt. No. 61-2 ¶8).   Jackson was then issued a Misbehavior Report charging him with several inmate rule violations.  (Dkt. No. 8 ¶56; Dkt. No. 8-2 at 20, 32).   One copy of this Misbehavior Report bears O'Connell's signature.  (Dkt. No. 8-2 at 32).   The short period of time between Jackson's grievances and the cell search, along with Monin threatening Jackson not to file any more grievances, creates a genuine dispute as to causation. *See Colon*, 58 F.3d at 872-73 (finding defendant's statement attesting to a retaliatory scheme against plaintiff and the temporal proximity between plaintiff's protected activity and the retaliatory act created an issue of fact as to causation); *Woodward v. Mann*, No. 09-CV-451(A)(M), 2013 WL 4039386, at *7 (W.D.N.Y. May 8, 2013) (finding issue of fact on causation where defendant-correction officer expressly threatened plaintiff not to file any more grievances, even though plaintiff had never filed a grievance against that particular officer).[7]

---

[7]   Defendants cite *Wright v. Goord*, 554 F.3d 255 (2d Cir. 2009) for the proposition that causation cannot exist where the officer who retaliated against the plaintiff was not named in the plaintiff's complaint.  However, in *Wright*, it does not appear that the officer who assaulted the plaintiff had any knowledge of the plaintiff's complaint.  *Id.* at 273-74.  To compare, here, Jackson contends that Monin and Wagner knew of his complaints against O'Connell, as evidenced by Monin threatening Jackson not to file any more grievances against O'Connell.

In sum, although the Court has approached Jackson's retaliation claim with skepticism and care, Jackson has come forward with evidence sufficient to raise issues of fact as to adverse action and causation.  Therefore, I recommend that the Court deny defendants summary judgment on Jackson's First Amendment retaliation claim.

III.    *Official Capacity Claims*

 "[T]he Eleventh Amendment bars a damages action against a State in federal court."  *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  "This bar remains in effect when State officials are sued for damages in their official capacity."  *Id.*  The Eleventh Amendment does not, however, bar an official capacity claim that alleges an ongoing violation of federal law and seeks prospective relief.  *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citing *Ex parte Young*, 209 U.S. 123 (1908)).

In his amended complaint, Jackson seeks compensatory damages, punitive damages, and injunctive and declaratory relief against defendants in their official capacities.  The Eleventh Amendment bars Jackson's request for damages against defendants in their official capacities.  *See Graham*, 473 U.S. at 169.  Jackson's request for injunctive and declaratory relief is also barred by the Eleventh Amendment because Jackson does not seek prospective relief for an ongoing violation of federal law; rather, he seeks relief for defendants' past violations of his First and Eighth Amendment rights.  *See Verizon Md. Inc.*, 535 U.S. at 645.  Therefore, Jackson's official capacity claims are barred by the Eleventh Amendment, and I recommend that they be dismissed.

IV.    *Jackson's Cross Motion for Summary Judgment*

I recommend that Jackson's cross motion for summary judgment be denied because, as discussed in connection with defendants' motion, Jackson cannot establish

the objective element of his Eighth Amendment claim and disputed issues of fact exist regarding the adverse action and causal connection elements of his First Amendment claim. Notwithstanding this recommendation, as previously discussed, I have treated the components of Jackson's cross motion (his response to defendants' Statement of Undisputed Facts, his declaration, and his "objections to defendants' points") as a supplemental opposition to defendants' summary judgment motion.

## CONCLUSION

I recommend that defendants' motion for summary judgment (Dkt. No. 42) be GRANTED in part and DENIED in part. Specifically, I recommend that the Court grant defendants summary judgment on Jackson's Eighth Amendment excessive force claim and his official capacity claims, but that it deny defendants summary judgment on Jackson's First Amendment retaliation claim.

I further recommend that Jackson's cross motion for summary judgment (Dkt. No. 61) be DENIED.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and Local Rule 72. Any requests for an extension of this deadline must be made to Judge Vilardo.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation***

***WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.***  *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."  ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

Finally, pursuant to Rule 73(b)(2), the parties are reminded that the Magistrate Judge is available to conduct all proceedings in this action (including a jury or nonjury trial) and to order the entry of a final judgment.  The judgment may then be appealed directly to the United States Court of Appeals like any other judgment of this Court.  The Magistrate Judge may exercise this authority only if all parties voluntarily consent.  You may consent to have the case referred to a Magistrate Judge, or you may withhold your consent without adverse substantive consequences.  The name of any party withholding consent will not be revealed to any judge who may otherwise be involved with the case.

**SO ORDERED.**

Dated:      March 10, 2016
            Buffalo, New York

                              */s/ Michael J. Roemer*
                              MICHAEL J. ROEMER
                              United States Magistrate Judge