UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSEPH JACKSON (05-B-1287),

        Plaintiff,                        DECISION AND ORDER

      v.                                   1:13-CV-4(LJV)

CHRISTOPHER MONIN,
ERIC WAGNER,

        Defendants.
_____

       The plaintiff, Joseph Jackson, has brought this action pursuant to 42 U.S.C. Section 1983 for injuries that he allegedly sustained while he was incarcerated at the Attica Correctional Facility. Jackson alleges that two prison guards, defendants Christopher Monin and Eric Wagner, violated his civil rights by threatening and assaulting him in retaliation for his having filed grievances against another prison guard, Sergeant Daniel O'Connell.[1]

       On April 25 and 26, 2017, this Court conducted a non-jury trial. Now that the Court has heard the testimony, reviewed the transcript of the trial and the exhibits, and given the plaintiff's claim careful consideration, the Court finds in favor of the defendants.

---

[1] The plaintiff's excessive force claim and his claims against several defendants in their official capacities were dismissed prior to trial. His claim against O'Connell also was dismissed. The only claim at trial, therefore, was the retaliation claim against Monin and Wagner.

## **FINDINGS OF FACT**

**Procedural Facts**

1. On January 2, 2013, Jackson commenced this action by filing a pro se complaint. Docket Item 1.

2. Jackson filed and served an amended complaint on September 24, 2013. Docket Item 8.

3. The defendants moved for summary judgment on October 19, 2015, and Jackson cross-moved for summary judgment on January 27, 2016. Docket Items 42 and 61.

4. On March 11, 2016, United States Magistrate Judge Michael J. Roemer issued a report and recommendation finding that the defendants' motion for summary judgment should be granted in part and denied in part and that Jackson's cross-motion for summary judgment should be denied. Docket Item 66.

5. On July 11, 2016, this Court adopted Judge Roemer's report and recommendation. Docket Item 72.

6. On April 25 and 26, 2017, a non-jury trial addressed Jackson's only remaining claim: that Monin and Wagner retaliated against him for filing grievances against O'Connell. Docket Items 105 and 106.

7. On April 25, 2017, the attorneys for the plaintiff and the defendants gave opening statements, and the plaintiff presented his case consisting of his own testimony and the testimony of the defendants. Docket Item 107.

8. The defendants began presenting their case on April 25, 2017, with the direct examination of Monin. *Id.*

9. The defense case continued on April 26, 2017, with the cross-examination of Monin, the testimony of Wagner, and the testimony of non-parties O'Connell and Patrick Galloway; in addition, the plaintiff also took the stand for a second time to answer some questions from the Court. Docket Item 108.

10. The following exhibits were admitted during the trial: plaintiff's exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12A, 12B, 13, and 20; and defendants' exhibits A, B, C, D, E, F, G, H, I, and Z. *See* Docket Items 107 and 108.

**Substantive Facts**

11. Jackson drafted a grievance against O'Connell, incorrectly named as "O'Connors," allegedly for punishing Jackson for no reason and for harassing Jackson's visitors. *See* Exhibit 1.

12. The grievance is dated November 7, 2011, but was never filed. *See id.*; Docket Item 108 at 65.

13. The copy of the unfiled grievance that was marked and admitted as a trial exhibit came from Jackson's own papers. *See* Docket Item 108 at 65.

14. On December 1, 2011, Jackson filed a grievance dated November 20, 2011, in which he alleged that an unnamed "officer" harassed his family members when they tried to visit him, allegedly in "retaliation" for his having submitted grievances regarding "visiting room staff in the past." *See* Exhibit 2.

15. Jackson drafted a letter dated November 25, 2011, addressed to "Superintendent," complaining that the unfiled grievance marked as Exhibit 1, see above, had not been addressed by the facility. *See* Exhibit 3.

16. There is no record of this letter ever having been sent or received, and the copy of this letter that was marked and admitted as a trial exhibit came from Jackson's own papers. *See* Docket Item 108 at 65.

17. Jackson drafted a letter dated December 5, 2011, addressed to "Mail Room Supervisor," complaining that his family was not receiving the mail he was sending to them and asking that this be investigated; the letter does not mention any individual responsible for this. *See* Exhibit 4.

18. There is no record of this letter ever having been sent or received, and the copy of this letter that was marked and admitted as a trial exhibit came from Jackson's own papers. *See* Docket Item 108 at 65.

19. Jackson drafted a letter addressed to "Superintendent" dated December 13, 2011, complaining about "Sgt. D. O'Connell" and stating that prior complaints about O'Connell had not been responded to. *See* Exhibit 5.

20. There is no record of this letter ever having been sent or received, and the copy of this letter that was marked and admitted as a trial exhibit came from Jackson's own papers. *See* Docket Item 108 at 65.

21. Jackson drafted a grievance dated January 24, 2012, complaining of "retaliation," and complaining that because of his "past [g]rievances and [l]itigating," he was being denied "all call-outs including access to the law-library." *See* Exhibit 6.

22. There is no record of this grievance ever having been filed, and the copy of this grievance that was marked and admitted as a trial exhibit came from Jackson's own papers. *See* Docket Item 108 at 65.

23. Jackson filed an inmate grievance dated January 30, 2012, and labeled "Harassment," complaining that O'Connell denied Jackson's fiancée a visit with him. *See* Exhibit 7.

24. In response, Jackson was advised that his fiancée's privileges to visit him had been suspended as a result of a prior incident. *See id.* More specifically, Jackson's fiancée, who then went by the name Brandy Crawley, had lost all visiting privileges at the prison because she allegedly smuggled contraband to an inmate other than Jackson. *See id.* When Ms. Crawley petitioned to have her visiting privileges restored, the superintendent restored those privileges but limited them to non-contact visitation. *See id.* Three days later, and again about a week after that, Jackson's fiancée visited him using the name Brandy Adams, not Brandy Crawley, and therefore was permitted full-contact visitation with Jackson. *See id.* When prison officials learned that Brandy Crawley and Brandy Adams were the same person, they suspended Jackson's visitation privileges because both he and his fiancée had failed to notify prison officials of the fiancée's name change or that her visits were limited to non-contact visits. *See id.* Jackson was advised that because of this, he lost visitation privileges until May 6, 2012. *See id.*

25. At trial, Jackson testified that he wrote the grievance in Exhibit 7 because at that time he believed that he was wrongfully denied visitation with his fiancée; he testified, however, that he now realizes that he was incorrect and that he understands why the visit was not permitted. *See* Docket Item 107 at 39-40.

26. On February 15, 2012, Jackson wrote a memo, received by the Attica correctional facility on February 16, 2012, complaining that his certified legal mail may

5

not have been sent.  *See* Exhibit 8.  In response, the facility notified Jackson that his legal mail was being returned to him because he had expended more than the authorized postal advances to which he was entitled—that is, that he did not have enough money in his account to send the legal mail.  *See id.*

27. Jackson filed a grievance dated February 17, 2012, again complaining that he was improperly denied non-contact visitation with his fiancée.  *See* Exhibit 9.  As noted above, Jackson later learned that he was incorrect about the status of his ability to visit with his fiancée and now admits that this misunderstanding led him to file the grievance.  *See* Exhibit 9; Docket Item 107 at 39-40, 45-47.

28. On March 6, 2012, Jackson's cell was searched by Monin and Wagner and by Officer Galloway.  *See* Docket Item 107 at 48.

29. During the course of the search, the prison officials took a wedding band that Jackson had found in another facility a few years earlier, as well as a beard trimmer and electronic adapter that had been altered so that the trimmer could work without batteries.  *See id.* at 48-51.  Both the wedding band (which Jackson had found and was not from his own marriage) and the altered electronics violated prison policy.  *See id.* at 49; Docket Item 108 at 25-27.

30. Jackson claims that during the course of this search he was struck by Monin and threatened by Wagner in retaliation for his prior grievances against O'Connell.  *See id.* at 53-59.

31. The defendants admit that the cell search took place but deny that either of them struck or threatened Jackson or that they even knew about his prior grievances directed toward O'Connell.  *See id.* at 134-35; Docket Item 108 at 16-18.

## CONCLUSIONS OF LAW

1. To prove a First Amendment retaliation claim under Section 1983, a plaintiff must show by a preponderance of the evidence that (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action. *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009).

2. Petitioning for redress of grievances is protected conduct. *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995) (holding that prison officials are prohibited from retaliating against prisoners who exercise the right to file grievances).

3. For incarcerated plaintiffs, the Second Circuit defines "adverse action" objectively, as retaliatory conduct "that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (citation omitted).

4. The causal connection must be sufficient to support the inference that the speech played a substantial part in the adverse action. *See Diesel v. Town of Lewisboro*, 232 F.3d 92, 107 (2d Cir. 2000).

5. Jackson has failed to meet his burden of proving his retaliation claim by a preponderance of the evidence.

## ANALYSIS

This case boils down to a credibility determination. Jackson says that the defendants slapped him, threatened him, and ripped his legal papers in retaliation for grievances that he had filed against O'Connell. The defendants admit that they searched Jackson's prison cell and that they do not recall the particulars of the search,

7

but they deny striking him, threatening him, or ripping his legal papers. For several reasons, the Court credits the defendants' version and not the plaintiff's.

First, and most important, the Court had the opportunity to observe the demeanor of the witnesses when they testified. Based on those observations, the Court believes that the defendants testified candidly and honestly and that Jackson did not. That alone is good and sufficient reason for the Court's verdict.

In addition, there are several parts of Jackson's story that simply do not hold together. For example, Jackson filed a grievance against the defendants, dated the same day as the alleged incident, in which he claimed that Monin "ripped up [his] legal work" that was supposed to be submitted the next day. *See* Exhibit 10. Jackson was quite savvy about the grievance process, having written and/or filed several grievances, several of which were marked as exhibits at trial. But he never produced the allegedly ripped legal mail as evidence of what he said took place, instead testifying that he simply "threw [the ripped legal papers] out." *See* Docket Item 108 at 67. The Court finds it difficult to believe that an inmate who is well schooled in the grievance process would do that, especially when the grievance was prepared on the same day as the incident in question. *See Gill*, 389 F.3d at 381.

Moreover, while Jackson testified that the defendants struck and threatened him, and ripped his papers, in retaliation for filing grievances, and that the incident made him "scared for [his] life," he nevertheless filed another grievance "that same day" and appealed that grievance when it was denied. *See* Docket Item 107 at 57-58. And Jackson claims that Monin slapped him on the right side of his face with enough power to knock him down, but the Court finds it difficult to believe that Monin, who is right-

handed, would have used his non-dominant hand to slap Jackson (as would have been the case if he slapped the right side of Jackson's face) or that an open-handed slap with Monin's non-dominant hand would have been powerful enough to knock an apparently healthy and fit young man such as Jackson off his feet. *See id.*

What is more, Jackson's claim that his grievances against O'Connell were the reason for the defendants' harassment also does not fit with the other evidence. The defendants both testified that they were unaware of any grievances that Jackson had filed against O'Connell, and that is not surprising given that O'Connell is mentioned by name in only one of the filed grievances. *See* Exhibit 7. And Jackson now admits that even that grievance was mistaken and based on his misunderstanding at the time. In other words, as the basis for his claim that he was retaliated against for grievances he previously filed against O'Connell, Jackson relies on (1) several grievances and letters that he has no evidence of submitting or filing and that there is no evidence anyone ever received; (2) several filed grievances that he claims involve areas or departments for which O'Connell was responsible but that do not mention O'Connell by name; and (3) a single grievance, that Jackson now admits was mistaken, directed against O'Connell. The Court credits the defendants' testimony that they did not know anything about any of this. And the Court finds it hard to believe that even if they did, that would trigger retaliation as Jackson claims. *See Diesel*, 232 F.3d at 107.

The Court heard testimony for two days and paid careful attention to each of the witnesses as each witness testified. Based on its evaluation of the credibility of the witnesses, as well as on the above-mentioned gaps in the plaintiff's story, the Court finds in favor of the defendants.

SO ORDERED.

DATED: September 15, 2017
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE